RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10/17/11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

RUSSELL CHAPMAN                         DOCKET NO. 11-CV-711; SEC. P
    LA. DOC. #292058

VERSUS                                  JUDGE DEE D. DRELL

CORRECTIONS CORPORATION OF              MAGISTRATE JUDGE JAMES D. KIRK
TENNESSEE, ET AL.

### REPORT AND RECOMMENDATION

Pro se Plaintiff, Russell Chapman, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections ("DOC"), and he is incarcerated at the Winn Correctional Center ("WNC") in Winnfield, Louisiana. He claims that he was administered the wrong medication on one occasion, which caused lingering effects. Plaintiff seeks damages of $5 million. He names as defendants the Corrections Corporation of Tennessee ("CCA"), Warden Tim Wilkinson, Nurse M. Gaskill, and Medical Director Pat Thomas.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

In his original complaint, Plaintiff alleged that on or about October 21, 2010, he was given medication at "pill call" by Nurse Gaskill that did not look like the medication he takes daily. Despite recognizing that the pill did not look like his, Plaintiff

"eventually took it." [Doc. #1, p.3] He later discovered that it was the wrong medication. Plaintiff states that he then "became sick" and declared a medical emergency on October 21, 2010. He states that Gaskill gave him the wrong medication intentionally "due to several brief altercations" between the two regarding Plaintiff's medication.

Plaintiff alleges that he was called to the administrative office at one point to see Nicole Walker, who contacted Pat Thomas about the ongoing situation. Pat Thomas told Plaintiff that she would "look into the situation and get back to him," but that never happened. [Doc. #5, p.1]

Plaintiff alleges that he suffered minor injuries on October 31, 2010, when he fainted and hit his head. [Doc. #10, p.9-10] On or around February 4, 2011, Plaintiff was written up by Nurse Bronson for malingering. [Doc. #5, p.1]

On March 1, 2011, Plaintiff made an unspecified medical emergency. [Doc. #10, p.14]

On April 27, 2011, Plaintiff declare a medical emergency and was brought to the infirmary by wheelchair. He was released and sent back to his unit. A few hours later, he fainted at church and his head on the floor. Again, he was sent back to his unit. [Doc. #10, p.11]

On May 27, 2011, Plaintiff was taken to the infirmary because he fainted. He alleges that he hurt his neck when he fainted.

On June 8, 2011, Plaintiff was transported to LSU hospital for examination. However, Plaintiff complains that the doctor did not order an x-ray and "did nothing" for Plaintiff.

On June 9, 2011, Plaintiff was brought to the infirmary in a wheelchair because he was dizzy. He complains that the only treatment he received was having his blood pressure checked by Mrs. Tucker. [Doc. #10, p.11]

On June 30, 2011, Plaintiff states that he declared a medical emergency and was brought to the infirmary. [Doc. #10, p.11]

Plaintiff submitted a supplemental complaint stating that he underwent a medical exam at LSU Medical Center on July 19, 2011, which "indicated a fractured vertebrae resulting from the fall suffered from purposely being given the wrong medication." He alleges that medication prescribed by the LSU physician for pain is not being provided by WNC.

On August 6, 2011, Plaintiff was examined. [Doc. #10, p.15] On August 9, 2011, Plaintiff states that he made a sick call, but "nothing done." [Doc. #10, p.11]

### Law and Analysis

1. **Supervisory Officials**

As stated in the Memorandum Order of August 10, 2011 [Doc. #9], it is well-settled that "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations or (ii) they implement

3

unconstitutional policies that causally result in Plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied,* 508 U.S. 951 (1993). "Vicarious liability does not apply to §1983 claims." Pierce v. Texas Dept. of Crim. Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied,* 514 U.S. 1107 (1995). "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied,* 464 U.S. 897 (1983). Plaintiff was ordered to amend his complaint to allege either personal involvement by the warden or the implementation of an unconstitutional policy that resulted in his alleged injuries. Plaintiff submitted his amended complaint on September 13, 2011, but failed to present any allegations to support this claim.

As for CCA's liability under §1983 for the acts of its employees, a private corporation not vicariously liable under §1983 for its employees' deprivations of others' civil rights. See Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003); Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999); Street v. Corrections Corporation of America, 102 F.3d 810, 817-18 (6th Cir. 1996)(CCA cannot be held liable under §1983 on respondeat superior or vicarious liability basis). A private corporation is liable under §1983 only when an official policy or custom of the corporation causes or is the "moving force of the constitutional violation." Plaintiff was instructed to present

allegations of an official policy or custom of CCA that was the moving force behind a constitutional violation. He failed to address this and failed to submit any such allegations in his Amended Complaint.

Plaintiff's claims against CCA and Warden Wilkinson should be dismissed.

## 2. Medical Care

In his original complaint, Plaintiff alleges that he suffered a fractured vertebrae, which was discovered on July 19, 2011. He attributes this injury to his being administered incorrect medication on October 21, 2010. Plaintiff was ordered to amend his complaint to provide any facts in support of that claim. He was also ordered to state:

1. the date on which he allegedly fell causing the fracture;
2. whether he made a medical emergency call or regular sick call because of the fall; and
3. whether he complained to any of the defendants about back pain, and if so, when.

Plaintiff failed to respond to this portion of the order, as well. In fact, he does not even mention the alleged fracture in the amended complaint. Nor does he mention the alleged doctor visit on July 19, 2011, at which this fracture was purportedly discovered. The complaint is devoid of allegations to support Plaintiff's claim.

In order to state a claim for the denial of medical treatment, the facts underlying a claim of deliberate indifference must

clearly evince the serious medical need in question and the alleged official dereliction. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. Varnado, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. Hernandez v. Tex. Dep't of Prot. and Reg. Servs., 380 F.3d 872, 882 (5th Cir. 2004).

Plaintiff has not stated what, if any, treatment was recommended for his alleged fracture. He has provided no information to support his conclusory allegation that Nurse Gaskill acted with deliberate indifference or malice. Nor has he presented facts to support a claim of deliberate indifference as to any of the other defendants.

*Conclusion*

Plaintiff has been allowed to submit three amended complaints [Doc. #5, 8, 10], but he has only presented legal conclusions and conclusory allegations. Accepting all of Plaintiff's non-conclusory allegations as true,

**IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this _17th_ day of October, 2011.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE